Good afternoon. Illinois Appellate Court First District Court is now in session. The Honorable Justice Carl Anthony Walker presiding. Case number 2-0-0-5-0-1. Jennifer Karnarski versus Retirement Board. Okay, good afternoon everyone. I'm Justice Walker and I have here with me Justice Pierce and Justice Coghlan and I'd like to have the lawyers, if you could please introduce yourselves. Good afternoon. My name is Ralph Licari and I represent as co-counsel Jennifer Karnarski. Good afternoon. My name is Jerry Marconi and I represent the appellee in this case along with Mr. Licari. Good afternoon. Justin Kugler on behalf of the Retirement Board. All right and let's start with you Mr. Kugler. How much time do you need here today? Uh, I think I only need maybe five minutes, 10 minutes at most and then I can answer any questions. Okay, sure. Now we do allow each side 20 and who's going to argue? Mr. Licari or Mr. Marconi? Judge, I think what we're going to do is we're going to just split it. I'll start, probably go for maybe eight minutes and then Mr. Licari will take over. Okay, if the other justices have no objection, I'm fine with that. You can do that. Then who's going to do the rebuttal? I'm sorry, Mr. Kugler will be doing the rebuttal. Okay, that's fine. You can do it that way. Let's go with, let's get started with you Mr. Kugler. May it please the court. My name is Justin Kugler and as I previously introduced myself, I represent the appellants, the Retirement Board of the Policeman's Annuity and Benefit Fund of the City of Chicago. Now I'm sure your honors have read through and are familiar with the many a lot of medical records, certain video files that your honors have agreed to and the briefs and I have to admit much of that record primarily focuses on several questions. Whether Ms. Koenarski is or remains disabled, can or cannot perform certain functions, can she work in an assigned function within the Chicago Police Department, whether she was or was not a credible witness to testify before court. However, for purposes of this argument, I'd like to set those matters aside and as I re-read this record in preparation of this oral argument and consider the issues, review the law again, I believe that the crux of this entire argument rests in the question of whether Ms. Koenarski is even entitled to any benefits from this. That is, is she entitled to any benefits accorded to policemen to the provisions of the Illinois Pension Code or is Ms. Koenarski's claim more suited as a worker's compensation claim or some other claim that she may or may not have against the Illinois Pension Code. Simply put, Ms. Koenarski has never completed the Chicago Police Department training. She was never sworn in as an active police officer and was never duly appointed a member of the Chicago Police Department and now with the city's termination of her employment, can never become a duly appointed member of the Chicago Police Department. Now, the board, not only finding that Ms. Koenarski was no longer to be disabled or not disabled, but also finding her to not be a credible witness as they testified before, took a step back and they asked themselves if they reviewed this case as it was presented before them, which I believe is ultimately really raised to the point of what the CPD's termination of her employment, how could they, the board, pay a pension benefit to an individual until she becomes the age of 63 and thereafter pay her a lifetime, excuse me, a disability benefit until age 63, thereafter pay her a lifetime pension benefit for her life to an individual who never completed the CPD training, never became an active officer, never became a duly appointed member of the Chicago Police Department and this was the question that resonated in at least this board's mind as they reviewed this case before them. I'm sure this, your honors, are familiar with a couple cases and I re-read those. There's two cases which this court reviewed uh cited to similar situations. One of those cases involved the Chicago Police Department, that's the Todaro versus the Illinois Workers' Compensation case. That was case 1090447WC. There was another case involving the Chicago Fire Department paramedic candidate at the City of Chicago versus the Illinois Workers' Compensation. It was 1-12-1507WC. In this court, in reviewing those cases, it's been substantial that in looking at the capacity of which a CPD recruit for the fire department candidate, they are not deemed to be appointed members of those divisions as they have not, quote, formally been admitted to responsibilities and privileges thereto. And in substance, in those cases, the court maintained that those individuals had a viable claim for benefits pursuant to the Workers' Compensation Act and did not buy the argument that they should be paid by pension. Mr. Kugler, who do you represent? Who do I represent? The retirement board did not deny her benefits on the basis that she's not eligible for any benefits, did they? Not initially, no. No, in this case. Well, in this case, I guess, like I said, there's a lot of it in the... In this case, the board found, as I understand it, that this petitioner is eligible or is no longer eligible for duty disability benefits because she can return to work, correct? That was one of the arguments, correct. No, no, is that their finding? That's the ruling, right? Well, that was one of the findings. What was the other finding? Again, and I apologize if it wasn't... And again, I reread this and it wasn't really expounded upon and it was my fault I didn't expound on it enough. That was one of the findings, that as they reviewed this, they believe that Ms. Conarstie was no longer disabled to perform a function and sent her back. And what else did they find? However, they also found that, like I said, in reviewing this, wait, she was never a policeman. Did they find... Here, you can only appeal, right? An adverse judgment. What was the judgment you are appealing? What did they say about this case that caused you to file your appeal? And again, I think it's twofold, right? And again, I think initially, if we go back to the board's work and the board made multiple findings. One, Ms. Conarstie was no longer disabled and could perform. But additionally, the board found that, wait a second, what past boards may have done by giving her a benefit to begin with and thereafter allowing that benefit to continue probably was wrong. And they said, maybe we should have never even given her this benefit if they would. Did they say, we are not going to do it any longer? Did they make that finding? I'm sorry, I missed. I think there was a little overlap. Did they make that finding or did, as you say, they say, maybe we made a mistake? It's a question. Did they say you are no longer going to get benefits because you are not entitled to benefits? Did they make that finding? I do not know if it was explicitly said that way, but I do recall that it was any claim that Ms. Conarstie may have to entitlement to any future benefits is more akin to possibly a worker's compensation claim or another claim. Thereafter, the board recognizing that what past boards did was probably wrong. Council, wasn't the finding... I'm sorry, just... That's good. The issue before us is whether or not she's no longer disabled. You're presenting a whole new issue that I don't even think we realized before today that that issue was before us. And that is the issue that Justice Pierce just asked me about. Did the board also make a finding that there was a mistake made some years ago and she was never entitled to benefits in the first place? That's a brand new issue. And I'm asking you, is that issue even before us? I believe, I mean, that issue was presented in the briefs. I think it was also mentioned in the board's order upon termination. Okay. You have the order right there. Will you read us the language you're talking about? I apologize. I'd have to pull it up. I do not have it. I apologize. If you can't find it, I suspect Mr. Marconi or LaCarrie has it handy. It's on page 45 of the certified record. That's where it starts. 45 to page 52. Yes. And it's coupled with, and I apologize, it's a subsection after the phrase. And I read it, it's rather long. Do you want me to quote? Do you want me to read it? No. Yeah, go ahead. Okay. I mean, so I understand your argument. Yeah. I mean, there was a lot of findings. I think this was one of them where it says the board having reviewed one, the opinion of Dr. Horst as to Konarski's ability to be returned to the Chicago police department in a limited duty job to Konarski. Okay. What was that? Return to the police department in a limited duty job? Correct. That was their finding, wasn't it? Yeah. Well, I guess, I mean, to go on to it further, the board basically finds that it says, as such Konarski's dispute, if one now exists, does not involve a dispute with this board, but rather a grievance or a possible workers' compensation claim, excuse me, complaint she may have with the Chicago police department that she has not been allowed to become a sworn police officer. Right. But that's not a finding, is it? Their finding is that she's no longer disabled and she should return to work, to a limited duty position, right? Correct. But I think this whole thing came about, again, in the fact that now... Maybe that should have been their finding, but I don't see where it was. And I think, again, this, I guess, beast, I think, came before even more full than the fact that the Chicago police department thereafter terminated her employment. And now there's no more of a duty job or even any job for her to return to, to become an active officer. Well, I'll agree with you. There sure does not seem to be a good solution to this problem. Well, correct. And I think, and again, I think the board in looking at the pension code, right? The Illinois pension code is specifically Article that talks about who constitutes as a policeman, which is a statutorily defined term. It refers to those that are sworn and designated by law as PISA. You know, another problem that I had was the evidence at the hearing seemed to indicate that there are some people in this position that they have found limited duty positions for. I believe, correct. I believe there was a director of human resources at one point in time that came to testify that there are limited duty positions and they do return individuals to limited duty positions. And I think the problem here, if I understand it correctly, is they couldn't find one of those positions for Ms. Kornarski. I think, you know, and to be honest with you, I'm not really sure what, you know, I don't know if they didn't find one for her because ultimately again, what happened is the video files that were made part of the record was not something that the board initiated, right? These were video files that were initiated by the Chicago police department doing an investigation for alleged fraud or disability. So I can only, and I think in the order it mentions it, the board could only suspect maybe why they didn't give Kornarski a position, why they terminated her employment. Perhaps they didn't believe everything she was telling them when she showed up there that she could do things, couldn't do things. They had the videos themselves and said, we don't, I guess this is what the board is kind of making a leap because we don't have the department here, but they didn't even possibly believe her. So that's it. They're an at-will employee and we're not going to find you a job. Doesn't seem like you're being truthful to us. I mean, I don't know how much I should expound on the pension protection part of the argument, but again, given the fact that Kornarski has not become a police officer, can never become a police officer. What this board was sitting with was withstanding what passports may have done, right? What passports may have done may have been wrong, but now we're sitting with an individual who's not meet the definition of a police officer. And we're being asked to pay her a disability benefit. Thereafter, we're going to be asked to pay for a lifetime pension benefit. These are benefits that are afforded to policemen and their beneficiaries. And they have, these trustees are fiduciaries and they have a fiduciary obligation to not pay benefits to individuals for which they are not entitled to that. And, you know, by doing what, again, I know that initially they said she's no longer able to go back. I think there is a big part of this argument around righting the wrong and not compounding an error that the courts have done. Having a duty to fix, correct that. I think there is, again, certain provisions in the pension code that provide that authority as well, not just fiduciary duty, but provide that authority that disability benefits paid in violation of the act are deemed to be made an error. And so this board was correcting the error that I guess has long ago been made. And the board doesn't do that in their findings though. And you didn't read the actual findings of the board because their actual findings is just a real short paragraph. Or their final conclusions. They just simply concluded that she was no longer entitled to benefits because there were jobs in the police department that she could take. That's pretty much what they said. I believe that was on page 48 of the record. Yeah, I believe you are correct. I think there is multiple findings in subsection nine, but I think there's six or seven findings. But I think that's where the question started though, is what was their actual ruling? And their ruling here is that she was no longer entitled to benefits because she's no longer disabled and there are jobs that she can do within the police department. So we just want to be clear on that. We believe that that's the issue that's before us. You're raising this brand new issue that the board made a mistake years ago and that she was never entitled to any benefits. That's not the same question. And that's a fair point. And I think going to that issue that you addressed, your honor, there is, and again you've read the same record, there is certainly evidence to support that this woman was able to do an assigned job. Well, but that's where your argument should be, is that she's no longer disabled. But I noticed in your brief, I believe beginning at where you talk about the board's decision, beginning at page 10, 11, and 12, there's no case law cited to support the board's decision. Regarding the workers' compensation, is that what you're saying? No, regarding this issue, regarding the issue of whether or not she's no longer disabled, there's case law out there that actually, where there's video that refutes the doctor's statements on whether or not someone is actually disabled. And then there's video showing that the person is not disabled and the board chose to rely on that video, and in which case the board was affirmed in their findings, but none of that case law is cited. The only thing I can say is, obviously, I apologize for not citing those cases. I think, again, I think this is, if that's the future, we do need you to cite cases, because even though we do our work here in the appellate court, we're not a research bank where you just come and, you know, withdraw a research from us. We do ask that lawyers provide us with case law that supports their position, that their argument, so that we don't have to do all the research. We've done our research as a court, but we prefer it when the lawyers provide us that information rather than leaving it for us to go out and find it. That's a fair enough point. The one thing I just want to say, just to sum it up, and then I can move it on to opposing counsel, is, again, this is a somewhat, I think, unique case, the situation, and the fact that, again, Ms. Konarski is now terminated. So there really is not any position now to be returned to her. And so now that even the board has enough evidence, or the board believed it had enough evidence to support that she could perform an assigned function, now there is no more function for her to be returned to, because she's been terminated. But the board made their conclusion based on their determination that she's no longer disabled because she can do a limited duty job. And as it turns out, there aren't any jobs. So how is that her fault? How is that fair and just? Well, there are limited duty positions. The problem is, is the Chicago Police Department didn't give her one of them. Even after they promised her and said that they would, the Chicago Police Department ultimately didn't give her one. Now, she had to go back to the training academy because she was never, again, appointed a member of the Chicago Police Department. And so I suspect that because she didn't complete the training, the Chicago Police Department didn't give her one of those jobs. Well, from reading the record, it seemed to me that there weren't any jobs for her, at least if there were any, she was never offered one. And that the board, in making their positions available, which was why they found that she was no longer disabled and she was able to do a job. That is correct. Part of the, yes, part of the board is not only did they have evidence, the video testimony directed to her job. That sounds like a catch-22 to me. I don't know about you, but. And that's why I think I prefaced, I mean, this is somewhat of a unique situation where, again, Ms. Konarski is not an active officer. Again, entitled to all, because in my opinion, the board's opinion, the same entitlements that active police get. And I apologize if that, I guess, didn't come through clearly. Well, it sounds to me like down the line, or hopefully they're doing it now, someone needs to do something to ensure that this situation doesn't occur in the future, but we're kind of stuck with what the board did and what the law is. Wouldn't you agree? I would agree. And I would say that there's the two workers' compensation cases that I cited to came about after Ms. Konarski was initially granted disability benefits. Now, there have been individuals, recruits, that have approached the pension board seeking disability benefits, and they are turned away, saying that, no, you are not entitled to these benefits. You're not an active participant. You need to file the workers' compensation. So it has been remedied in the fact that there is a procedure now for individuals in Ms. Konarski's similar situation are not going to be coming before the board, but we are left with Ms. Konarski was in receipt of these benefits, and no board had ever taken this matter up, notwithstanding those cases that came down. Well, I appreciate your candor. Thank you. Thank you. Okay. Is that all you have, Mr. Kugler? Yes. Thank you very much. Okay. Thank you. Okay. And who's going first? I am, Your Honor. May it please the court, Jerry Marconi, on behalf of the FCAFLA, Mr. Kugler, Mr. Licari. Before I go into what I think happened here with regard to the workers' comp, and Mr. Licari and I discussed this this morning, I think there's been a change in the law. So going back to 2003, she could not have sought workers' compensation benefits. That was the law at the time. So she was covered by the pension board. I think that has changed since. So when Mr. Kugler refers to recruits coming before the board and getting turned away, yes, I think today that could possibly happen. But I think as Justice Pierce mentioned, this was never an issue in this case. This was never an issue before the board. This was a 2003 injury. So Ms. Konarski could never seek workers' comp benefits. I think there's a three-year statute of limitations. So I think that's kind of a non-issue that the board never really got into, and for good reason. It wasn't the law at the time. They considered her a police officer at the time. So how did we get here today? We know this case is all about whether or not the disability ceased pursuant to 5-156, and that's the only way they could stop payments. Justice Coghlan, you brought up the catch-22. That's words coming from the Kazuka's case, which is the same board where they used the same argument, where they brought in Section 115, and where they explained disability as being unable to perform any assigned duty or duties. And I think the Supreme Court said it has to be an assigned duty. In other words, you can't just say there's positions available, but then never offer the position to the applicant and then deny it for that reason. So step back and look at this. I think the pension board kind of shot itself in the foot because they forced Officer Korniarski to go back to HR, and that's when they terminated her, when she was seeking this light-duty assignment. I think the record is very clear. At no time did Officer Korniarski not want to go back to work. I mean, she went back to the academy. She got a high B average. She missed one day. She wanted to get back. And then the only reason that she didn't is that apparently the academy wouldn't let her graduate because she couldn't do the power test, which included the run. So it's very... I understand the board's frustration because they're paying this person who was only on the job for three or four weeks, but we got to operate within the limits of the law. And if you go back and look at the history of the case, this was the second time they tried to do this. The first time they tried to do it, when she went back to the academy, Mr. Okari filed a complaint for administrator review. It was assigned to Judge Cohen. He kind of held it. And then as soon as they wouldn't let her back at that time, the board reinstated her benefit, right? And then, and that was it. That administrative review went. Seven months later, they got her back in front of the board again, and again, moved to terminate her benefit. It's interesting because they talk about credibility in an investigation, but this investigation started when she was in the academy. The officer Gallagher who testified, she said, we were asked to do surveillance for a week. There was no quote unquote investigation. She was outside of her, I think she worked in the medical abuse unit and that wasn't a situation here. Then she said she was given this assignment in the confidential unit and they basically followed her for a week. And then the board chose to present about 45 minutes of video out of this whole week that they followed her. I think what screams out to me and which is kind of disturbing in this case, and I cited it in the brief, is his longtime trustee Lappy when he puts out his publication, trustees corner, he blames the lawyers. He said, I would be remiss for not mentioning how the lawyers fight, twist the facts and truth to keep these people on disability in some fashion. Personally, I find it disgusting and shameful. So this is how this thing gets started, right? So you've got this trustee who's telling all of these people out there, sharing about the facts of her case. I think he started out saying how heroic this was that she hurt herself at the academy and said, I'm going to take care of this. I think there's an inference to be made that it was the pension board who started this investigation, not the Chicago police department. So, and then we end up here today. But I think clearly this falls within the recovery. And I think that's admitted throughout the briefing. It's admitted during the hearing, you know, justice Walker brought up, brought up the video. You know, normally when you have video, you show it to your doctors and the doctors say, Oh, I changed my opinion because it looks like this person is performing activities outside of their restrictions. This case, Dr. Horace, the pension board's doctor was sitting there during the hearing. And he was looking at the video. Now he said it was the first time he saw it at the hearing, but he's watching the video. He never ever said that that video made him conclude in his medical opinion that her disability resolved or that she would be able to do the job. And I think that's very telling too. You can't just look at video, which the board did and said, Oh, she's carrying a mattress or up. She carried a 25 pounds. That doesn't mean that her, that her disability had ceased. She still has to run a mile. She still has to do the power test. She still has to do the handcuffing techniques. She still has to do defensive tactics. And if you remember, if you look, I mean, that's how she severely injured her ankle, ankle was in doing defensive tactics. This is an unfortunate case. Foster Poniarski does not want to be in disability has never wanted to be on disability. And it's hard to believe that with the city of Chicago and this pension board, that they can't put their heads together to come up with some way to put her back to work within her restrictions. Now, I know Mr. LaCari is going to talk a little bit about the state standards because he's a former police officer, his son's a police officer, but you know, we were saying all along and I'll direct you to the, the, the board's reasons to continue it. They continued it to bring somebody in from HR to basically say there's a job available. Okay. And that never happened. They couldn't find anyone. The other disturbing thing about the case, I think is something else I brought in. That's the due process issue. Officer Poniarski shows up in June on this new review status. She asked time to get an attorney and they suspend her benefit. And I somebody at least an opportunity to present as present the case. The board had nothing before him at that time because she merely walked in and said, I need an attorney. And she has been suspended ever since. And to me that according to Peacock would be a violation of her due process in that there's some language in Peacock that indicates that you should at least to have a pension benefit. And I think it applies to retirement benefits too. So I think if you kind of do a 30,000 foot view of this case, yeah, you have all the facts that definitely show that she's disabled, but you know, how did we get here today? And again, I think it's very unfortunate because of the fact, I understand the board's concerned they're paying her and she'd only been an officer for three weeks, but at the same time they have to follow the law and it's not the lawyers. Nobody's trying to twist the facts or twist the truth. We're trying to follow the law. And that's what we've done throughout this case. The pension board on the other hand is not follow the law. And I think for those reasons, I think that the circuit court properly reversed the pension board and we'd asked the court to affirm and then Mr. Licari can get a little further into the training. Well, before we start that, it seems to me just the way I look at this thing, that we have to have a clear understanding of what we are dealing with. Agreed. Okay. Tell me if I'm wrong. We have a recruit who was injured three weeks into the job, right? Correct. That recruit is not a police officer. It's just a recruit. And for the next 15 or 20 years, the pension board is paying 75% duty disability benefits, correct? Yes. They now reach a point in this case where upon an examination, they determine that the recruit is no longer entitled to a 75% duty disability that she's able to go to work. Correct? Yes. I'm not sure about recruit, but yes, she cannot go back to work. Well, she's not in a city. Well, in any event, but the point is they're saying we're not going pay duty disability benefits anymore because you're able to go to work. Yes. That's the issue. Right. She tries to go to work and the police department won't take her. And now the board is saying, well, we're not going to pay her, correct? Because she's not disabled. So the issue, am I wrong? The issue is, is there sufficient evidence in the record that sustained the board's determination that this disability annuitant is no longer entitled to benefits because she's not disabled, correct? Yes. Section 156 that her disability has ceased. Right. So that's the only issue before us. That is correct. It's not a question of whether she's properly entitled to any benefits. It's that we're deciding she's not entitled to a duty disability benefit. Correct? Correct. Okay. That the board improperly terminated her benefit. Right. Because she's able to work. Correct. And they would need evidence to support that conclusion. Yes. And our review is whether the record supports that conclusion, correct? Correct. Nothing else. No, this is, this is Kouzikas. Okay. All right. The ultimate question of whether with the passage of time or subsequent decisions after she got injured back in the early 2000s is not before us and remains to be seen whether the pension board does anything on that basis, correct? Yeah. The only issue I would bring up is the due process issue because that's been an issue in other cases and we brought it up in the brief and before the board. That issue is not before us, correct? Well, I argued, I did argue that in the brief because. But that issue is only important if the question of whether she's entitled to any benefit at all, correct? Correct. Or for another day. Well, I think in Peacock, what happened was is that they took the benefit away and then the court awarded the benefit. And then eventually the court affirmed the pension board where they said that she had recovered or he had recovered from disability. So the court gave back benefits from the time they suspended them up until the final decision. But they had nothing to do with eligibility. No. Okay. No, nothing. Because all these other issues are important, serious, everything else, but they're not before us because the only question is, did the board in this case have sufficient evidence to sustain their decision that she was no longer disabled? Correct. That is the issue here. Okay. Thank you. Anything further, Mr. Marconi? I don't. He's done that. Okay. Mr. Curry. Hey, please. The court attorney Marconi, attorney Kugler, Ralph McCurry on behalf of Jennifer Kornarski. I want to focus a little bit on what the order says, which is on page 53 of the record issued by the board. And there's no dispute in the order in the beliefs that Ms. Kornarski is able to perform at limited duty only. That's very important in this case. There's never been a finding by anyone that Ms. Kornarski could perform at full duty. And why that's important is that in order for Ms. Kornarski to work as a police officer in a limited duty capacity, she first has to pass the police Academy, including the state power test standards. Now, on page 310 of the record, she did try to apply for an accommodation outside of the police department and that was denied. So the only possible job she could have is limited duty at the police department. And at the initial hearing, the record shows that acting director Johnson promised that it would find her a job, even with her disability, when she finished the academy. She spent $5,000 to $6,000 in equipment. She only missed one day of training. And on the last week, she was told she couldn't take the state exam because she didn't meet the requirements. Now that was all known to us. And that's why I objected to the board taking her benefits away. If we look at the testimony of Sergeant Penix, Sergeant Penix was the training director of the terms when he testified at the hearing. In this case, he said that there is no limited duty for the recruits going through the academy. So there are no accommodations like that. There is no dispute that when you're in the police academy, it's full duty and full duty only. There's no such thing as limited duty. And what's amazing here is even in Mr. Kugler's last brief, his reply admits there's no dispute that of her inability to return to the CPD in a full duty capacity. So how can Ms. Kornarski go back to work if she can't finish the academy? It's a catch-22. Unless she finishes the academy, she can't report to the police department as a sworn limited duty officer because you have to pass the state training standards. That's state law. That cannot be waived. And we know that because on page 731 of the record, commander or director Lewandowski, the actual director of the personnel division, terminated Ms. Kornarski because as it says, she's failed to pass and complete the required training under the Illinois law enforcement training and standards. That's required. We all know she couldn't do that. It's only a minimal part. But because she couldn't do that, she couldn't become a sworn officer. And because she couldn't become a sworn officer, she can't work limited duty as a Chicago police officer. That's a prerequisite. And no one disputes, no one disputes that her ability is limited duty only. And no one disputes that in order to finish the academy and attend the academy, you have to be full duty. So, you know, the board here is pretty much admitted in their briefs that she can't go to the academy because she can't work full duty. And we know that, but she tried. This officer has done, or this person has done everything possible to get her job back. She spent six months at the police academy and only missed one day. What more could she do? On page 310 of the record, it shows she applied for accommodations. Those accommodations were for the Curry. But, but the point is we review the record before the pension board. Yes. Your argument just now is proof that she's not, that she is disabled is the facts that the police department won't take her. That was not before the pension board when they made their decision that she was not disabled. Was it? Yes, because she was terminated after she finished the academy and didn't pay. It wasn't allowed to pass. We went before the board again. So the board had an evidence, the fact that in order to complete, did they make their determination that she was not disabled after the police department rejected her? Yes. Yes. I filed. Yeah. I filed a motion. Okay. Yeah. I accept that. And I can cite the page. I filed a motion. I accept it. So that's all I can say. The board had all the facts at its disposable, including the fact of the letter terminated her, which I filed in a motion. And I asked the board to defer their decision and reconsider their decision based on the fact that she was fired because she couldn't pass the academy. That motion was denied. And that's why this case went before judge Taylor and administrative review. Okay. I understand. I get that about 30 seconds, Mr. Kari, but if you've got some important points that you were intending to make and you haven't gotten to them, we'll give you an opportunity to do that. That's all I would just ask in my closing that the, that the court, please affirm the trial court's order, reversing the retirement board and awarding a miss Kornarski, 75% benefits retroactive to the date they were terminated. And also remand the matter to the court, uh, to determine the attorney's fees and costs to which Miss Kornarski is entitled to pursuant to the Illinois pension code, section five dash 2 28. That's important in this case because for three years, she's been paying attorney's fees. The statute allows for recovery. The court affirms this decision. Thank you, Mr. Spock. Can I ask one more question? Yes, absolutely. Uh, to any of the three lawyers, because the petitioner was never hired by the Chicago police department, how long does she stay on a 75% duty disability assume nothing changes? My, my understanding is, is that a police officer, a non-probationary police officer gets 75% duty disability for a non-job injury, but when they're eligible to retire, they then go on to a pension. Is that correct? That's not, that's not available here, is it? Well, that, I guess that is what I think I was trying to allude to is by saying to the board that you need to reinstate her disability back. She would be entitled to those benefits all the age 63 mandatory retirement age. And then thereafter she would be entitled to a lifetime pension for her life because she was a three week probationary. I mean, uh, she was a recruit. She was a recruit, never employee. She's entitled to 75% until she's 63. Yes. Active officers who are granted a duty disability benefit can receive that benefit up to age 63. That's kind of where I was prefacing because this is a situation now with the CPD's termination of her employment, the board would never be able to send her back to a job. So it's almost forcing the board to pay her this at 63. And during that whole time, she would be accumulating service time and then paying her a pension for life. She's accumulating service time as a, um, a recruit who was never hired on the police department. That's correct. Justice Pierce, when you say she was never hired, I'm not, she was hired. She was an employee of the Chicago police department and she was sworn in as a Chicago police officer. So she was hired as a recruit. Yes. And when you say recruit, they're called PPO's justice. And what that means is for the, what's a PPO, a probationary police officer. And for the first 18 months you're on PPO status. So even though you're a police officer, the contract provisions of the FOP don't apply. Some of them don't apply for the first day. So this would be no different than we have a recruit who finishes the academy and goes out on the street day one and gets shot and becomes disabled on his first day on the job. So he would have six months on the job. He'd be entitled to the same benefit. So it's not the time, it's the type of injury and what he was doing or she was doing. Okay. But, but once you, once you are accepted into the academy on your first day, you're a probationary police officer? Yes. And that says right in the board's order. All right. Okay. All right. That's fine. And Mr. Lucari, do they, do they usually refer to them as cadets? No, PPO's. PPO's. Okay. Thank you. All right. Thank you, Mr. Lucari. Go ahead, Mr. Lucari, you can finish your thought. Page 45 says Kornarski was appointed a member of the board. Okay. Thank you. And Mr. Kugler? I just, just to, I guess I'll, I'll close, but I just want to answer a couple of questions. I don't think that was a finding. I think that was a brief background, but in this, as I kind of alluded to before, and I know if we're saying this may not be an issue with this case, may or may not be an issue, but Ms. Kornarski was not ever appointed or sworn in. She never took the oath of office, did not have the same job responsibilities as an active police officer. So again, I do want to touch on the entitlement to the disability benefits and what the board did by way of termination. There is certainly sufficient evidence in the record to support what the board did by way of terminating her benefits and finding that she could perform a limited job. Dr. Orris at all maintained she could perform a function with or without the videos. He always maintained that she could perform a function. When Ms. Kornarski went back to the academy, he signed numerous, and this is on the record, two from, what's called two from letters saying I couldn't do this. I can't do that. I need a cane. I need a brace. I need all these things which prevented her from completing certain functions within the academy. Those are all contradicted by a review of the videos. Contrary to what attorney Marconi provided, this is not an investigation that the pension board initiated. The pension board didn't even have these records until after they re-entitled her benefits. After receiving them, they said, wait a second, maybe Ms. Kornarski wasn't truthful when she came back here that she couldn't do those things, saw the videos, called in the investigator that took a lot of those videos, and said we don't find her to be truthful. She claims that she needs a cane and can't walk. We can see her pushing motorcycles, carrying mattresses, going up and down stairs. It's not coinciding with what the testimony she provided. Now, again, I know the Kazookas case. This is a little bit different because Kazookas was an active police officer. In that case, I think Butita was another case that stood for the premise that you can't put an active officer in limbo. Even if the pension board finds them to be disabled, there has to be an active job that you return them to. But this case is different than Kazookas and the Butita case. Ms. Kornarski, she was not an active officer. Again, notwithstanding the fact that is there enough in the record, which I believe there is, to support the court that terminated her benefits, we don't even find her to be disabled. Now, CPD and its termination of your employment, the board can't control that. We don't know why CPD ultimately terminated her. That's something that the board can't control. Was there enough in the record to support that the board felt she was no longer disabled? But by saying there wasn't enough and that she should be reinstated is, in essence, saying to the board, you have an individual that doesn't meet the statutory definition of a policeman, was never sworn in, is disability-affiliated. But you're still making those arguments, Mr. Kugler, and that issue's not before us. And I think that we've all made it clear that we're not suggesting that that issue is foreclosed and can never be before a court. But today, the issue before us is whether or not she's no longer disabled and therefore no longer entitled to benefit. The board apparently previously made a decision that she was entitled to benefit. Now, if the board believes that was a bad decision, the board hasn't addressed that issue. So you're still arguing it, and I think we've all made it clear to you that it's just not before us. And we're not ruling on it. We're not commenting on it. We're just simply telling you that the issue's not before us today. Justice Walker, may I make a brief, like a five-minute, not even? I'll come back to you, Mr. Kugler, so that you get the last word. Please look at page 575 of the record when they have time. And this is the original hearing that was conducted on the injury by David Kugler, Justin's grandfather, who was the pension board attorney for many, many years. And these are the questions that were asked. And this is extremely important. I'm going to just read two. And he asked Kornarski, and you were appointed a member of the Chicago Police Department on August 25, 2003. That is correct. And this is the most important. And while a probationary police officer, I'm going to say that again. And while a probationary police officer, you were at the Academy. And on October 15 of 2003, you sustained an injury. Correct. So even the board acknowledged that she was a probationary police officer at the original hearing in 2003. And that's David Kugler's own words from the transcript. Mr. Kugler. And I don't dispute, I don't know what the point, but I don't dispute that Ms. Kornarski was a probationary police officer. It's not a defined term as a policeman, but I'm going to move aside from that point. Again, I guess the only thing I would say is again, in reviewing the totality here, and I understand that Ms. Kornarski no longer has a job to do, and can no longer return to a job with the Chicago Police Department by way of determination. But a review of the record is enough and is not against the math, the erroneous standards, to support that based upon the review of the medical, certainly the video files, that Ms. Kornarski was no longer disabled and could have performed a function with the police department. Why the CPD never gave her that job, never returned her to the job, or why they can't answer, obviously those are questions for the Chicago Police Department. With that said, I have nothing further. Okay, thank you all for your excellence, and the hearing's adjourned.